**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**DEBORAH S. WOLFE,**

        **Plaintiff,**

**v.**                               **Civil Action No.: 5:09-CV-66
JUDGE STAMP**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

        **Defendant.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING
THAT THE DISTRICT COURT GRANT DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [18], DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13],
AND AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE**

## I.      INTRODUCTION

On June 17, 2009, Plaintiff Deborah S. Wolfe ("Plaintiff"), by counsel Roger D. Forman,

Esq., filed a complaint in this Court to obtain judicial review of the final decision of Defendant

Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "Defendant") pursuant to

Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). On August 24, 2009, the

Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an

answer and administrative transcript of the proceedings. On September 24, 2009 and November 16,

2009, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [13]

[18]. Plaintiff attached additional medical records to her motion for summary judgment and her

response in opposition. She also filed a supplemental memorandum. Following review of the

motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate

Judge now issues this Report and Recommendation to the District Judge.

## II.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND AND REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION

### A.   Procedural Background

On August 9, 1990, a prior social security decision found Plaintiff disabled as of September 21, 1989, due to a gunshot wound in her left arm, alcoholism, and back pain. Tr. at 14; Pl. Doc. 14 at 10. In 2004, social security terminated her benefits due to an increase in Plaintiff's assets by a receipt of life insurance proceeds from the death of her son in a car accident. Tr. at 14 & 18.

On January 13, 2006, Plaintiff re-applied for supplemental security income, alleging disability as of September 21, 1989. Tr. at 14. On February 27, 2007, the United States Administrative Law Judge ("ALJ") held a hearing, and Plaintiff testified under oath. Tr. at 335-83. *See* 20 C.F.R. § 404.929 (hearing before an administrative law judge). On May 24, 2007, the ALJ issued an unfavorable decision to Plaintiff, finding her not entitled to a period of disability. Tr. at 12-26.

While her 2006 disability application was pending on appeal, on June 20, 2007, Plaintiff applied again for supplemental security income. Pl. Doc. 14 Ex. 1 (2009 ALJ Decision).

On April 16, 2009 the Appeals Council denied Plaintiff's request for review on her 2006 disability application, which made the ALJ's decision the final decision of the Commissioner. Tr. at 6-9. *See* 20 C.F.R. § 404.967 (Appeals Council review--general); *see also* 20 C.F.R. § 404.981 (Effect of Appeals Council's decision or denial of review).

On August 20, 2009, a different ALJ found Plaintiff disabled based on her 2007 disability application, due to lung cancer, which was diagnosed in January 2009. *See* Pl. Doc. 14 Ex. 1 (2009 ALJ decision). The 2009 decision found Plaintiff disabled as of June 20, 2007, the date of her 2007 disability application. *See* Pl. Doc. 14 Ex. 1 (2009 ALJ decision). In the 2009 decision, the ALJ

noted that the prior decision denied Plaintiff's previous 2006 disability application, but the ALJ declined to re-open the 2006 application. *See* Pl. Doc. 14 Ex. 1 (2009 ALJ decision). Therefore, Plaintiff's 2006 disability application before this Court addresses the time period between January 13, 2006 (the date of her 2006 application) through May 24, 2007 (the date of the ALJ decision in the 2006 application). *See* Comm'r Doc. 19 at 2; *see also* Pl. Doc. 20 at 1. Plaintiff now requests judicial review of the 2007 ALJ decision denying her 2006 disability application for the period of January 13, 2006 through May 24, 2007.

### B.        Standard for Judicial Review of a Decision by the Administrative Law Judge in a Disability Case

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th

Cir.1972). "The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added). In applying these legal

standards, the Court reviews the decision by the ALJ.

### C.      Standard for Disability and Five-Step Evaluation Process

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A). In order for the ALJ to determine whether a plaintiff is disabled and

therefore entitled to disability insurance benefits, the Social Security Administration has established

a five-step sequential evaluation process. The five steps are as follows (including Residual

Functional Capacity Assessment prior to Step Four):

Step One:      Determine whether the plaintiff is engaging in substantial gainful activity;

Step Two:      Determine whether the plaintiff has a severe impairment;

Step Three:      Determine whether the plaintiff has a "listed" impairment;

* Residual Functional Capacity Assessment *
(Needs to be Determined Before Proceeding to Step Four)

Step Four:      Compare residual functional capacity assessment to determine whether the plaintiff can perform past relevant work;

Step Five:      Consider residual functional capacity assessment, age, education, and work

experience to determine if the plaintiff can perform any other work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process and coming to a decision, the ALJ makes findings of fact and conclusions of law. This Court will review the decision by the ALJ to determine whether it is supported by substantial evidence, in accordance with 42 U.S.C. § 405(g) and *Hays*.

### D.      Review of ALJ Application of Five-Step Evaluation Process and whether it is Supported by Substantial Evidence

### 1.      Step One: Determine whether the Plaintiff is Engaging in Substantial Gainful Activity

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized....

If you are working or have worked as an employee...[g]enerally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity...

[I]f you are self-employed [w]e will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity...

If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled ***regardless of your medical condition*** or your age, education, and work experience.

*See* 20 C.F.R. § 404.1572; *see also* 20 C.F.R. § 404.1574(a) (evaluation guide if you are an

employee); *see also* 20 C.F.R. § 404.1575(a)(2) (evaluation guide if you are self-employed); *see also* 20 C.F.R. § 404.1520(b) (emphasis added). The ALJ noted that the extent of Plaintiff's earning history is $92.00 in 1977; $3,871.35 in 1978; $2,668.28 in 1979; and $372.65 in 1988. The ALJ found that Plaintiff has not engaged in substantial gainful activity at any time relevant to this decision. Tr. at 17.

### 2. Step Two: Determine whether the Plaintiff has a Severe Impairment

> At the second step, we consider the medical severity of your impairment(s)...[A] severe impairment... [is] any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities...We will not consider your age, education, and work experience...
>
> An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. Basic work activities...mean[s] the abilities and aptitudes necessary to do most jobs. Examples of these include--1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521; *see also Luckey v. U.S. Dept. of Health & Human Services*, 890 F.2d 666 (4th Cir. 1989). The ALJ found Plaintiff to have the following severe impairments: alcohol and nicotine dependence, borderline intellectual functioning, depression, and residual effects from an old left arm gunshot wound. Tr. at 17.

Plaintiff contends that the ALJ should have found her multiple bone disorders and repeated fractures to be a severe impairment. Pl. Doc. 14 at 10-12 & 15. Plaintiff also contends that she has the additional impairments of problems with manipulating her hands and fingers, problems with grip and dexterity, and osteoporosis. Pl. Doc. 14 at 15. The ALJ reviewed Plaintiff's medical and alcohol

abuse history to determine Plaintiff's impairments. Tr. at 17-24.

  a.     **The ALJ Considered Plaintiff's Medical History, Credibility, Daily Activities, Pain Symptoms, and Alcohol Abuse Evidence to Determine Plaintiff's Impairments**

On August 9, 1990, a prior social security decision found Plaintiff disabled as of September 21, 1989, due to a gunshot wound in her left arm, alcoholism, and back pain. Tr. at 14; Pl. Doc. 14 at 10. In 2004, social security terminated her benefits due to an increase in Plaintiff's assets by a receipt of life insurance proceeds from the death of her son in a car accident. Tr. at 14 & 18.

The ALJ noted that the law regarding alcoholism and disability has changed since Plaintiff initially received benefits from 1989 through 2004. Tr. at 14. On March 29, 1996, President Clinton signed Public Law 104-121, the Contract with America Advancement Act of 1996, prohibiting payment of supplemental security income to individuals for whom drug and alcohol abuse was a contributing factor material to the finding of disability. "[A]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would...be a contributing factor material to the Commissioner's determination that the individual is disabled." *See* 42 U.S.C. § 1382c(a)(3)(J). Therefore, the ALJ evaluated whether Plaintiff had impairments notwithstanding alcohol abuse.

In March 2004, Plaintiff broke her right shoulder, and the Pocahontas Memorial Hospital staff noted that she was smoking 1 ½ packs of cigarettes per day and drinking 6-8 beers per day. Tr. at 124-25.

In May 2004, Plaintiff returned to the emergency room with pain in her right arm after falling at home. Tr. at 139-40. The hospital staff noted that Plaintiff smelled of a strong odor of alcohol. Tr. at 140.

On June 5, 2004 through June 7, 2004, Plaintiff was hospitalized for nausea and vomiting.

Tr. at 142 & 145. Plaintiff admitted that she had been drinking vodka since June 1, 2004. Tr. at 151. William Browning, Jr., D.O., noted that Plaintiff has a long history of binge drinking and that she smokes 1 ½ packs of cigarettes a day and drinks 2 to 12 beers per day. Tr. at 145. Dr. Browning diagnosed Plaintiff with acute alcoholic gastritis with intractable nausea and vomiting, dehydration, recurrent hypomagnesemia, nicotine addiction, acute alcoholic hepatitis, malnutrition, chronic allergic rhinitis, chronic obstructive pulmonary disease, and generalized osteoarthritis. Tr. at 142.

In March 2005, Plaintiff went to the Pocahontas Medical Clinic after falling an injuring her hand and fingers, and the medical provider noted that she smelled of alcohol and diagnosed alcoholism. Tr. at 193.

In June 2005, Plaintiff reported to a medical provider that she has been drinking heavily since the death of her son in October 2004. Tr. at 256. Plaintiff stated that she drank a 6 pack to a case of beer daily, and the medical provider noted that she smelled of alcohol on the date of her examination. Tr. at 256.

In August 2005, Plaintiff went to Davis Memorial Hospital for treatment due to a right hip fracture. Tr. at 167-70. Plaintiff said she had 4-5 shots of liquor to celebrate her birthday and got up to go to the bathroom and tripped on her flip-flops in the kitchen or living room. Tr. at 168-69. Plaintiff admitted that she has been smoking 2 to 3 packs of cigarettes per day for a great number of years and drinks up to a case of beer per day and also drinks liquor. Tr. at 168.

On January 18, 2006, Kenneth E. D'Amato, D.O., examined Plaintiff regarding the fractures of her right hip and right tibia. Tr. at 210. Plaintiff said that her hip does not bother her at all and she "forgot that she had anything wrong with it." Tr. at 210. Plaintiff reported that her knee bothers her and she has days when her knee will be very stiff but today was a good day. Tr. at 210. Dr. D'Amato

concluded that Plaintiff's right hip and right tibia fractures had been healed. Tr. at 210. Dr. D'Amato noted that Plaintiff had full range of motion of the right hip with no tenderness, no swelling in the right knee, and no tenderness at the fracture site. Tr. at 210. Dr. D'Amato recommended corticosteroid injections for her knee pain and advised Plaintiff to return as needed. Tr. at 210.

On January 24, 2006, Plaintiff went to the Pocahontas Medical Clinic for a routine follow up. Tr. at 252-53. The medical provider noted that Dr. D'Amato recommended a cortisone shot. Tr. at 253. The medical provider noted that Plaintiff was very difficult to interview due to acute intoxication. Tr. at 252-53. The medical provider reported that Plaintiff had alcohol on her breath, slurred speech, and an unstable gait. Tr. at 253. The medical provider advised Plaintiff to discontinue alcohol abuse but Plaintiff was not motivated to do so. Tr. at 252.

On February 8, 2006, Plaintiff completed a Function Report and stated that cares for all her own personal needs. Tr. at 77-78.

On February 9, 2006, Plaintiff completed a Pain Questionnaire and stated that she has knee pain 2 days a week and hip pain 2 to 4 days per week. Tr. at 83-84. She reported that the only medication she takes for the pain is Tylenol, and that she rubs on Aspercreme ointment as needed. Tr. at 84-85.

On February 17, 2006, John C. Sharp, D.O., Plaintiff's primary treating physician, reported that Plaintiff's alcoholism and depression affected her ability to work but that she refuses to go to mental health treatment. Tr. at 224.

In March 2006, Uma Reddy, M.D., a State Agency Medical Consultant, performed a physical residual capacity assessment on Plaintiff and found that she could perform light work with limitations. Tr. at 225-32.

> *Light work* involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work...
>
> *Sedentary work* involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met...If someone can do light work, we determine that he or she can also do sedentary work.

*See* 20 C.F.R. § 404.1567 (italics added). In concluding that Plaintiff could perform light work, Dr. Reddy noted Plaintiff's history of hip and knee problems secondary to osteoporosis. Tr. at 230. Dr. Reddy found that Plaintiff had no limitations for handling (gross manipulation) and fingering (fine manipulation). Tr. at 228. In assessing Plaintiff's residual functional capacity, Dr. Reddy considered Plaintiff's daily activities of making her own bed, dressing and bathing herself, being able to comb her own hair, shave, feed herself, use the toilet, prepare light meals, perform light house cleaning, do laundry, ride in a car, shop at the grocery store, and handle her own finances. Tr. at 232.

In April 2006, Shelia V. Rose, M.S., performed a psychological evaluation on Plaintiff. Tr. at 233-38. Plaintiff admitted that she drank alcohol in the morning prior to the appointment, and the psychologist noted alcohol on Plaintiff's breath. Tr. at 235. Plaintiff reported that she drinks 2 beers daily but sometimes drinks all day long. Tr. at 235. Plaintiff said she previously weighed 160 pounds but now only weighs 99 pounds. Tr. at 233 & 236.

In May 2006, Plaintiff returned to the Pocahontas Medical Clinic for a follow up

appointment. Tr. at 251-52. The medical provider urged Plaintiff to discontinue alcohol and tobacco abuse but Plaintiff was not motivated to do so. Tr. at 251.

In July 2006, Rogelio Lim, M.D., a State Agency Medical Consultant, performed a physical residual capacity assessment on Plaintiff and found that she could perform light work with limitations. Tr. at 273-80. In concluding that Plaintiff could perform light work, Dr. Lim noted Plaintiff's history of healed fractures in her right hip and tibia and joint problems in her finger. Tr. at 278 & 280. Dr. Lim found that Plaintiff had no limitations for handling (gross manipulation) and fingering (fine manipulation). Tr. at 276. Dr. Lim concluded that Plaintiff's allegations of pain were not totally disabling and Plaintiff was only partially credible. Tr. at 278. Dr. Lim opined that a residual functional capacity of light work is consistent with the medical evidence and Plaintiff's activities of daily living. Tr. at 278.

In December 2006, Plaintiff had a psychological evaluation with Tina Wagner, M.S. Tr. at 290-95. Plaintiff stated that she was shot accidentally in the arm when she was in the eighth grade and received surgery for bone grafts. Tr. at 292. Plaintiff said she drinks 6-8 beers a week and that she started drinking at age 19. Tr. at 292.

**(1)** **Further Evidence to Evaluate Plaintiff's Impairments and to Determine whether to Reject the Opinion of Plaintiff's Primary Treating Physician**

Plaintiff contends that the ALJ erred in rejecting the opinion of Plaintiff's primary treating physician, John C. Sharp, D.O. Pl. Doc. 14 at 12-14.

> Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005). Courts often accord "greater weight to the testimony of a treating physician"

> because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather, "the ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir.2001).

*Johnson v. Barnhart*, 434 F.3d 650, 654 & n.5 (4th Cir. 2005). The ALJ used these factors in determining whether to accept the opinion of Dr. Sharp.

On March 1, 2007, Dr. Sharp, Plaintiff's primary treating physician, completed a questionnaire concerning Plaintiff's impairments. Tr. at 318-22. The ALJ noted that Dr. Sharp stated that he had seen Plaintiff every month for the last 20 years. Tr. at 318 (Sharp questionnaire); Tr. at 19 (ALJ decision). Dr. Sharp diagnosed Plaintiff with osteoporosis, COPD, alcohol dependence, GERD/PUD, depression, and fractures with symptoms of inability to eat, fatigue, weakness, pain, and depression. Tr. at 318. Dr. Sharp stated that Plaintiff had pain in the legs, knees, hips, and shoulder, and that she could only sit, stand, or walk for less than 2 hours in an 8 hour work day. Tr. at 318 & 320. Dr. Sharp concluded that in his opinion, her restrictions and limitations would not improve even if she were to quit drinking. Tr. at 322.

On March 13, 2007, Plaintiff had an office visit with Dr. Sharp. Pl. Doc. 20 Ex. 1. Dr. Sharp noted that one of her chief complaints was reflux within the context of a history of smoking. Pl. Doc. 20 Ex. 1. Dr. Sharp found that the reflux is aggravated by alcohol, and that her symptoms are nausea, weight loss, and regurgitation. Pl. Doc. 20 Ex. 1.

On May 17, 2007, Plaintiff had an office visit with Dr. Sharp. Pl. Doc. 20 Ex. 1. Dr. Sharp noted that Plaintiff's chief complaints were depression, GERD, and osteoporosis. Pl. Doc. 20 Ex. 1. Dr. Sharp found that Plaintiff's depression and GERD are aggravated by alcohol. Pl. Doc. 20 Ex.

1. Dr. Sharp noted that Plaintiff is a chronic smoker and alcoholic, and he urged her to cut down. *See* Pl. Doc. 20 Ex. 1.

### b.     The ALJ's Conclusion regarding Plaintiff's Impairments and whether to Reject the Opinion of Plaintiff's Primary Treating Physician

The ALJ rejected Dr. Sharp's opinion regarding Plaintiff's impairments because he found that Plaintiff's limitations would be less significant if Plaintiff stopped drinking and smoking. Tr. at 20. The ALJ found that the record does not support Dr. Sharp's opinion that she is disabled notwithstanding her alcohol abuse, considering Plaintiff's generally routine and conservative treatment. Tr. at 15. The ALJ further found that Dr. Sharp's March 1, 2007 assessment appears based on Plaintiff's reported symptoms and limitations, as opposed to objective findings and diagnostic test results. Tr. at 20. The ALJ rejected Dr. Sharp's opinion that Plaintiff's physical restrictions and limitations would not improve even if she were to quit drinking since the record does not reflect a sustained period where Plaintiff abstained from alcohol to substantiate that her impairments would be debilitating in the absence of alcohol. Tr. at 20. The ALJ also found that Dr. Sharp's contemporaneous treatment notes do not reflect the statement that Plaintiff's restrictions and limitations would not improve if she were to quit drinking. Tr. at 24.

Substantial evidence in the record supports the ALJ's conclusion as to Plaintiff's limitations and impairments, and substantial evidence supports the ALJ's decision to reject the opinion of Plaintiff's primary treating physician.

### 3.     Step Three: Determine whether the Plaintiff has a "Listed" Impairment

If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [Subpart P of Part 404] and meets the duration requirement, we will find that you are disabled. *See* 20 C.F.R. § 404.1520(d).

The Listing of Impairments...describes...impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. *See* 20 C.F.R. § 404.1525(a).

Most of the listed impairments are permanent or expected to result in death. *See* 20 C.F.R. § 404.1525(a).

We need evidence from acceptable medical sources (e.g. licensed physicians) to establish whether you have a medically determinable impairment(s). *See* 20 C.F.R. § 404.1513(a).

To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies ***all of the criteria*** in the listing. *See* 20 C.F.R. § 404.1513(a) (emphasis added).

***An impairment that manifests only some of those criteria, no matter how severely, does not qualify***. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885 (1990) (emphasis added).

In the May 24, 2007 decision that is the subject of this appeal, the ALJ found that Plaintiff did not meet the criteria for a listed impairment, based on her 2006 disability application. Tr. at 21.

However, while her 2006 disability application was pending on appeal, Plaintiff filed another disability application in 2007. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). In January 2009, Dr. Richard E. Topping diagnosed Plaintiff with lung cancer. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). In August 2009, a different ALJ found that Plaintiff met the listing criteria for 13.14 (lung cancer), based on her 2007 disability application. Pl. Doc. 14 at 8 & Ex. 1. Plaintiff argues that this is new and material evidence to warrant a remand in her 2006 disability application, which is the subject of this appeal. Pl. Doc. 14 at 7.

"Evidence is new within the meaning of this section if it is not duplicative or cumulative...[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Secretary, Dept. of Health and Human Services*, 953 F.2d 93 (4th Cir. 1991). This Court will review the record and the newly submitted evidence to evaluate whether Plaintiff's subsequent 2009 lung cancer diagnosis would have changed the ALJ's 2007 decision and thereby warrant a remand.

In October 2002, Plaintiff had a whole body bone scan while she was in the hospital. Tr. at 115-19. *Inter alia*, the scan revealed "periosteal type increased activity in the distal femoral metadiaphyses bilaterally. Consideration should be given to hypertrophic osteoarthropathy or perhaps thyroid acropachy. The former can be associated with neoplasias including lung cancer. Also other chronic diseases can give this appearance." Tr. at 119. Despite this report, Plaintiff and her doctors did not follow-up on the possibility of lung cancer.

In August 2005, Plaintiff admitted to smoking 2 to 3 packs of cigarettes per day. Tr. at 168.

On May 17, 2007, Plaintiff had an office visit with her primary treating physician, Dr. Sharp, and he noted that Plaintiff is a chronic smoker and is "going to quit....some day???" *See* Pl. Doc. 20 Ex. 1.

On May 24, 2007, the ALJ issued his decision, which is the subject of this appeal, finding that Plaintiff did not meet the criteria for a listed impairment, based on her 2006 disability application. Tr. at 21.

On June 20, 2007, Plaintiff applied again for supplemental security income ("2007 disability application"). Pl. Doc. 14 Ex. 1 (2009 ALJ Decision).

In April 2008, a CT of the chest revealed a 2 cm dense mass-like lesion in the superior

segment of the right lower lobe; possibly a focal pneumonia but more like malignancy. Pl. Doc. 14 Ex. 1 (2009 ALJ decision).

In September 2008, a CT of the chest revealed persistent 3 cm mass in superior segment of right lower lobe, configuration typical of malignancy but little if any significant interval change over the past five months. Pl. Doc. 14 Ex. 1 (2009 ALJ decision).

In January 2009, Dr. Richard E. Topping diagnosed Plaintiff with non-small cell lung cancer, and an oncologist referred Plaintiff for follow-up on resection versus non-surgical treatment. Pl. Doc. 14 Ex. 1 (2009 ALJ decision).

In August 2009, a different ALJ found that Plaintiff met the listing criteria for 13.14 (lung cancer), based on her 2007 disability application. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). In the 2009 decision, the ALJ noted that the prior 2007 ALJ decision denied Plaintiff's 2006 disability application. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). In the 2009 decision, the ALJ noted that the 2007 decision found that if Plaintiff discontinued abusing alcohol, she could perform light work. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). The ALJ in the 2009 decision noted that the Appeals Council affirmed the 2007 decision on appeal. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). After providing this procedural history, the ALJ in the 2009 decision found no basis for reopening the prior 2006 disability application, which was the subject of the 2007 decision. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). Thus, Plaintiff's 2006 disability application before this Court addresses the time period between January 13, 2006 (the date of her 2006 application) through May 24, 2007 (the date of the ALJ decision in the 2006 application). *See* Comm'r Doc. 19 at 2; *see also* Pl. Doc. 20 at 1.

Despite the ALJ's decision in 2009 not to reopen the prior 2006 disability application, Plaintiff contends this Court should remand the 2007 ALJ decision based on the subsequent 2009

lung cancer diagnosis because she had symptoms of cancer during the relevant period. Pl. Doc. 14. at 8-9. Plaintiff states that in October 2002, she had a whole body bone scan that revealed "periosteal type increased activity in the distal femoral metadiaphyses bilaterally. Consideration should be given to hypertrophic osteoarthropathy or perhaps thyroid acropachy. The former can be associated with neoplasias including lung cancer. Also other chronic diseases can give this appearance." Tr. at 119. Despite this report in 2002, Plaintiff and her doctors did not follow-up on the possibility of lung cancer; Plaintiff reported smoking 2 to 3 packs of cigarettes in 2005; and Plaintiff was not diagnosed with lung cancer until 2009. Tr. at 168; Pl. Doc. 14 Ex. 1 (2009 ALJ decision).

Plaintiff says she had weight loss, shortness of breath, loss of appetite, and low energy during the relevant time period. Pl. Doc. 14 at 8. However, in March 2007, Plaintiff's primary treating physician, Dr. Sharp, noted that one of Plaintiff's chief complaints was reflux within the context of a history of smoking. Pl. Doc. 20 Ex. 1. Dr. Sharp found that the reflux is aggravated by alcohol, and that her symptoms are nausea, weight loss, and regurgitation. Pl. Doc. 20 Ex. 1. Dr. Sharp also did not refer Plaintiff for a follow-up on possible lung cancer.

Moreover, in May 2007, the same month as the 2007 ALJ decision, Plaintiff had an office visit with Dr. Sharp, and he noted that Plaintiff is a chronic smoker and is "going to quit....some day???" *See* Pl. Doc. 20 Ex. 1. Therefore, in the same month as the ALJ decision, Plaintiff's primary treating physician noted that Plaintiff was a chronic smoker and did not refer her for follow-up on possible lung cancer.

Plaintiff cites *Bradley v. Barnhart*, 463 F. Supp.2d 577 (S.D. W. Va. 2006) in support of her motion to remand. In *Bradley*, the District Court for the Southern District of West Virginia found that "...pursuant to *Wilkins*, 953 F.2d 93, remand is warranted when the evidence is (1) new, (2)

material, and (3) relates to the period on or before the date of the ALJ's decision." *See Bradley*, 463 F. Supp.2d at 581. In *Bradley*, a second ALJ decision awarded benefits based on medical evidence dated in June 2005, which was two months after the first ALJ decision denied benefits in April 2005. *See Bradley*, 463 F. Supp.2d at 581. However, in the instant case, the August 2009 ALJ decision relied on medical evidence from almost a year following the May 2007 ALJ decision: Ct scan in April 2008; CT scan in September 2008; and lung cancer diagnosis in January 2009. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). In addition, the ALJ in the August 2009 decision considered the prior May 2007 decision and concluded it was not necessary to reopen the 2006 application. Pl. Doc. 14 Ex. 1 (2009 ALJ decision). Therefore, the medical evidence in the 2009 ALJ decision did not relate to the medical evidence in the 2007 ALJ decision.

"Evidence is new within the meaning of this section if it is not duplicative or cumulative...[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d 93. Accordingly, from a review of the record and the newly submitted evidence, the Court finds that Plaintiff's subsequent 2009 lung cancer diagnosis would not have changed the ALJ's 2007 decision and therefore does not warrant a remand.

Plaintiff also contends that the ALJ should have considered the record from Plaintiff's original disability award from 1989, which found Plaintiff disabled due to a gunshot wound in her left arm, alcoholism, and back pain. Tr. at 14; Pl. Doc. 14 at 9-10. However, the record prior to 1989 is not relevant to the January 13, 2006 through May 24, 2007 time frame; and moreover, the law regarding disability and alcohol has changed since Plaintiff originally received benefits in 1989. *See* ALJ decision Tr. at 14.

Substantial evidence supports the ALJ's finding that Plaintiff did not meet the criteria for a

listed impairment during the relevant period of January 13, 2006 through May 24, 2007.

**\* Residual Functional Capacity Assessment \***
**(Needs to be Determined Before Proceeding to Step Four)**

> If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record...We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work...and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work...

> Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record....

> Residual functional capacity is a measurement of the most a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). According to the Social Security Administration, residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Regulation (SSR) 96-8p. Residual functional capacity is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain). *See* 20 C.F.R. § 404.1529(a).

*See* 20 C.F.R. § 404.1520(e); *see also* 20 C.F.R. § 404.1545(a); *see also Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006). The ALJ reviewed Plaintiff's medical evidence, impairments, physical and mental limitations, pain symptoms, daily activities, and credibility; and from the entire record, the ALJ concluded that if Plaintiff discontinued abusing alcohol, she would have the residual functional capacity to perform light work. Tr. at 21-24. Specifically, the ALJ found that if Plaintiff stopped the substance use, she would have the residual functional capacity to perform unskilled light work (lift

or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday) that involves occasional postural activities ( climbing, balancing, stooping, kneeling, crouching, and crawling) and avoids concentrated exposure to workplace hazards (such as moving machinery and unprotected heights), respiratory irritants (such as fumes, odors, dust, gases, and poor ventilation), extreme cold, and vibration. Tr. at 21-22.

Substantial evidence supports the ALJ's residual functional capacity assessment that Plaintiff could perform light work during the relevant period of January 13, 2006 through May 24, 2007.

4. **Step Four: Compare Residual Functional Capacity Assessment to Determine whether the Plaintiff Can Perform Past Relevant Work**

> At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.
> 20 C.F.R. § 404.1520(a).
>
> Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.
> 20 C.F.R. § 404.1560(b).
>
> Your impairment(s) must prevent you from doing your past relevant work.  If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment...with the physical and mental demands of your past relevant work. (See § 404.1560(b).) If you can still do this kind of work, we will find that you are not disabled.
> *See* 20 C.F.R. § 404.1520(f).

The ALJ found that Plaintiff has no past relevant work within the last 15 years. Tr. at 24. The parties do not dispute the ALJ's findings in Step Four.

**5.     Step Five: Consider Residual Functional Capacity Assessment, Age, Education, and Work Experience to Determine if the Plaintiff Can Perform Any Other Work**

> At the fifth and last step...
>
> [i]f we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

*See* 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1560(c). At the final step of the disability analysis, the ALJ considered Plaintiff's age, education, work experience, residual functional capacity assessment, and vocational expert testimony to determine whether Plaintiff could perform any other work. Tr. at 25-26. The ALJ noted that Plaintiff was 50 years old at the time of her application, which makes her an individual closely approaching advanced age as defined in the Social Security Act. Tr. at 24. *See* 20 C.F.R. § 404.1563 (age as a vocational factor). The ALJ found that Plaintiff has a limited education and transferability of job skills is not an issue. Tr. at 25. *See* 20 C.F.R. § 404.1564 (education as a vocational factor); *see also* 20 C.F.R. § 416.968(d) (transferability of job skills).

Vocational Expert J. Herbert Pearis testified that someone with Plaintiff's residual functional capacity, age, and limited education would be able to perform "light exertional" jobs such as maid, laundry working position, hand packer, and silver wrapper. Tr. at 371-72. Mr. Pearis stated that there were at least 251,000 of these types of jobs available locally in Virginia and West Virginia; and there were 775,000 jobs available nationwide. Tr. at 371-72.

Plaintiff contends that the ALJ failed to ask the Vocational Expert if jobs existed that Plaintiff could perform, notwithstanding her problems with manipulating her hands and fingers, problems with grip and dexterity, osteoporosis, and repeated fractures. Pl. Doc. 14 at 15. However, the ALJ correctly asked the Vocational Expert what jobs Plaintiff could perform with the limitations established by the record. For the analysis on Plaintiff's limitations and impairments, *see supra*, Section II.D.2, of this Report and Recommendation. Substantial evidence supports the ALJ's conclusion that if Plaintiff discontinued alcohol abuse, she could perform light work; therefore, this was the proper hypothetical for the ALJ to present to the Vocational Expert.

After considering the Plaintiff's age, education, work experience, residual functional capacity assessment, and vocational expert testimony, the ALJ found that there are jobs that exist in the national economy that Plaintiff could perform. Tr. at 25-26. Substantial evidence supports the ALJ's decision that Plaintiff could perform other work during the relevant period of January 13, 2006 through May 24, 2007.

> Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 529. **Ultimately, it is the duty of the administrative law judge reviewing a case, and *not* the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.** *King*, 599 F.2d at 599. "This Court does not find facts or try the case *de novo* when reviewing disability determinations." *Seacrist*, 538 F.2d at 1056-57; "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock*, 483 F.2d at 775. **"The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"**

*See Hays*, 907 F.2d at 1456 (emphasis added). Therefore, this reviewing Court will uphold the ALJ's decision that Plaintiff could perform other work because it is supported by substantial evidence.

In conclusion, the ALJ found that based on the Plaintiff's application filed on January 13, 2006, the Plaintiff was not entitled to supplemental security income. Tr. at 26. The Court finds that substantial evidence supports the ALJ's decision that Plaintiff was not disabled and could perform other work in the national economy during the relevant period of January 13, 2006 through May 24, 2007.

### III.      RECOMMENDATION AND CONCLUSION

The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[18]**, **DENY** Plaintiff's Motion for Summary Judgment **[13]**, and **AFFIRM** the Decision of the Administrative Law Judge. The Court notes the Plaintiff's objections to the ruling.

Within fourteen (14) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Recommendation. The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the District Judge. Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: January 27, 2010**

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE